OPINION OF THE COURT
Stanley L. Sklar, J.
The principal issue presented on this application is whether Judiciary Law § 474-a (2), which limits the fees of counsel for plaintiff in a medical malpractice action, requires amendment of a structured judgment to reduce counsel fees when the amount in fact received on behalf of an infant plaintiff is drastically reduced by the early demise of that plaintiff.
This medical malpractice action was tried before the Honorable Carol H. Arbor in February 1996, and has since been reassigned to this Part. The trial jury returned a verdict in favor of plaintiffs, finding that the infant plaintiff Geor Carchi Munoz sustained serious physical injury as a result of defendant’s malpractice. Damages were awarded as follows:
Past Pain and Suffering for Geor Munoz: $ 500,000
Loss of Services and Society to Otita Munoz: 50,000
Future Damages:
Medical Expenses: 165,000 for 37 years
Therapies: 1,900,000 for 37 years
*529 Special Equipment: 67,000 for 37 years
Home Attendant: 2.000. 000 for 37 years
Loss of Earning Capacity: 1.000. 000 for 37 years
Pain and Suffering: 500,000 for 37 years
Total: $6,182,000
Posttrial proceedings were held before Judge Arbor, resulting in the structured judgment entered by the Clerk of the Court on October 28, 1997.
On or about September 4, 1997, defendant New York City Health and Hospitals Corporation (HHC) filed a notice of appeal from the July 2, 1997 order, and on or about November 13, 1997, HHC filed a notice of appeal from the October 28, 1997 judgment. Therefore, upon proper service of the notice of appeal, all proceedings to enforce the judgment were stayed pending the outcome of the appeal (CPLR 5519 [a]).
The infant plaintiff died on January 2, 1998. The death certificate lists the immediate cause of death as “seizure disorder complicating anoxic encephalopathy due to perinatal asphyxia”. By order dated May 26, 1998, this court granted the motion to substitute Otita Munoz, administratrix of her son’s estate, as plaintiff in this action, and to amend the caption accordingly.
As a result of the infant plaintiff’s death, only two months after the entry of judgment, HHC moves to modify/amend the judgment, and to have its proposed amended judgment signed by the court.
It is HHC’s position that the death of the infant plaintiff mandates court-ordered modification of the judgment. Plaintiff maintains that defendant’s motion is unnecessary, in that defendant’s obligations to pay damages have ceased by operation of law, except those payments which were due prior to his death, and those for lost earnings.
The judgment entitled the infant plaintiff to an immediate lump-sum cash payment of $643,982, together with interest at the rate of 3% per annum from the date of verdict, in the sum of $32,128.53, for a total sum of $676,110.53. This figure represents the present value of the sum of damages awarded for past damages, together with the first $250,000 of future damages, minus apportioned attorney’s fees and litigation expenses.
In its proposed judgment, defendant reduces the infant plaintiff’s entitlement by $67,659.73 to $608,450.80, without providing a legal basis for doing so. CPLR article 50-A “operates by providing for an immediate judgment for a portion of the damages, including all past damages and a portion of future *530 damages, and the balance to be ‘structured’ and paid out in periodic installments over a period of time.” “Past damages are still to be awarded as a lump. Of the total future damages award, up to $250,000 is still payable as a lump sum upon judgment, which will then be deducted from the total future damages structured award” (Bermeo v Atakent, 241 AD2d 235, 242 [1st Dept 1998]; CPLR 5031 [b]; 5041 [b]). Furthermore, interest is also a component of the award, and regardless “of whether an award is to compensate past damages, future damages, or both, interest is awarded as of the date of the verdict * * * and applied against the total sum awarded” (supra, at 247; CPLR 5002). Death of a judgment creditor prior to the end of the judgment term only affects payment of future damages, excluding those awarded for loss of future earnings (CPLR 5035 [b]). Thus, CPLR article 50-A provides no basis for altering the lump-sum award after the entry of judgment, and defendant’s motion to reduce this award is accordingly denied.
Defendant also proposes to reduce the lump-sum award to the infant plaintiffs mother, Otita Munoz (Munoz). Munoz was awarded $50,000 for loss of services. After making the appropriate adjustments, Munoz’ entitlement totaled $45,073.90, as reflected in the entered judgment. However, defendant’s proposed, amended judgment reduces this sum to $41,207.80, and again, provides no authority for doing so. For all the reasons stated above, defendant’s motion to reduce this lump-sum award is denied.
The third decretal paragraph of the structured judgment sets forth the recovery of attorney’s fees and litigation expenses incurred, and defendant has again proposed a reduction in the recovery sum, claiming the child’s early death mandates this reduction.
Clearly, as a result of the infant plaintiffs death only two months after the entry of judgment, Munoz will receive far less than expected after trial, as the bulk of the judgment was expressed in future damages. Notwithstanding her loss, Munoz is entitled to receive all future damages for the two months prior to her son’s death, plus future damages for loss of earnings, which are not life contingent (CPLR 5035 [a], [b]). The calculation of the attorney’s fees and litigation expenses is based on the aggregate award, reduced to present value, and is paid in a lump sum, upon entry of judgment (Bermeo v Atakent, supra, 241 AD2d, at 243; CPLR 5031 [c], [d]; 5041 [d]). The fee paid is not made contingent upon the judgment creditor, herein the infant plaintiff, surviving until the end of the judgment term.
*531 This yields a fee in the amount of $624,480.07 for plaintiffs attorneys, Kramer, Dillof, Tessel, Duffy & Moore, Esqs.
In its proposed amended judgment, HHC suggests an alternate method for calculating these fees. HHC proposes basing such fees on sums recovered, and not on amounts awarded after trial. From a review of their proposed figures, HHC is apparently defining, “recovered”, as “received”. Defendant contends that Judiciary Law § 474-a (2) requires that the present value of the future lost earnings “recovered”, together with the initial lump-sum recovery, rather than the amount “awarded”, form the base from which the attorney’s fees are calculated. Defendant, however, fails to provide legal authority to support this interpretation.
A review of the CPLR and the entered judgment reveals that the amounts “recovered” refer to the sums itemized as the “present value” sums. The recovery cannot refer to the amount eventually received by plaintiff, as that could only be ascertained after completion of the judgment term as determined by the trier of fact, or upon the death of the injured plaintiff, whichever comes first. By providing for the lump-sum payment of attorney’s fees and expenses upon entry of judgment, the statute makes clear an intention to calculate the fees based on the present value recovery, not the eventual, indefinite sum proposed by defendant. As there always exists the possibility in a medical malpractice case that an injured plaintiff could predecease the judgment term, there is always the possibility that a plaintiffs attorney could end up receiving a significantly higher amount of money than plaintiffs estate. At oral argument, when asked whether a judgment would have to be revised if many years had passed before the plaintiffs death, HHC’s counsel responded that there would be a point beyond which the judgment could not be revised, but that since this death occurred so soon after the entry of judgment, it must be amended. The inability to draw a precise line underscores the invalidity of the argument. The amendment sought is simply not authorized by any statute and is not mandated by Judiciary Law § 474-a. Furthermore, defendant has failed to tender any agreement specifying an alternate method for calculating these fees, therefore, the attorney’s fees remain as set forth in the judgment entered.
Plaintiff maintains that modification of the entered judgment is unnecessary, as payment for future damages, excluding loss of earnings, ceases by operation of law. Article 50-A makes clear that defendant’s obligation to pay future damages, *532 excluding loss of earnings, terminated upon the death of the judgment creditor. HHC is not relieved of that portion of the judgment pertaining to past damages, together with the first $250,000 of future damages awarded, nor is HHC relieved of its obligation to make payment for future damages for the two-month period prior to the infant plaintiffs death.
While either plaintiff or defendant may petition the court, pursuant to CPLR 5035 (b), for an order converting the portion of the periodic payments allocable to the loss of future earnings to a lump sum, there appears to be no authority or necessity for modifying the entered judgment to reflect the judgment creditor’s death. Pursuant to the article 50-A structured judgment provisions, HHC was required to purchase an annuity contract to facilitate its obligation to pay the future damages. However, neither party has submitted a copy of an annuity contract purchased in favor of the infant plaintiff, and, therefore, this court is unable to review provisions which would have been triggered by the death of Geor Carchi Munoz, prior to completion of the judgment term.
No annuity contract may have been purchased here. Therefore, unless either interested party successfully petitions the court for an order converting the future earnings to a lump sum, the annuity contract shall be drawn and/or modified to “reflect the provisions of CPLR 5035 relating to the effect of the death of the judgment creditor upon the liability for payment of the installments” (Ursini v Sussman, 143 Misc 2d 727, 732-733 [Sup Ct, NY County 1989]).
Accordingly, the motion is denied with leave to renew in accordance with the foregoing.